Good morning, ladies and gentlemen. We are here to have the re-hearing on Bach and the case of the United States v. Swisher. You may proceed, counsel. Joseph Horace of Smith-Horace Law Office for the Appellant Elven Joe Swisher. I'd like to reserve five minutes for rebuttal. May it please the Court, counsel. The First Amendment protects the speech we detest as well as the speech we embrace. The Supreme Court in the United States v. Alvarez has stated, false speech is deserving of First Amendment protection. If we were to have a free and open debate, thoughtful discourse, outlying falsity gives the government broad censorial power to limit our open, free debate and speech. Our argument is that this reasoning also extends to false expression, and in this matter, wearing military medals without authority. The nonverbal conduct in that case is clearly expressive and clearly deserving of First Amendment protection under United States v. Alvarez. 18 U.S.C. 704a contains no limiting force. It's not limited to time or place. Therefore, it's facially invalid. We must first construe the statute and determine what it covers. In this matter, the statute covers pure false expression, that is, wearing a military medal without authority. Again, that is expression that is deserving protection under the First Amendment. Why? The purpose of false expression allows free debate. It allows us to express ourselves. It gives value and meaning to truth. Therefore, by encouraging the expression of untruth, without untruth, there is no truth. And that's what the Supreme Court... It's a short answer because the Supreme Court said so in Alvarez. Correct. Well, the Supreme Court addressed only spoken words, so the question here is whether there is a reasonable distinction between spoken words and a medal, and wearing a medal, which the Perlman panel thought there was a significant distinction. Why shouldn't we reaffirm Perlman? Your Honor, the government at this point seems to concede that the false expression is not just conduct in itself, but the actual outline prohibiting of the false expression is related to the content of that expression. So it's not the wearing of the medals has no significance or significant criminal conduct unless it is tied to the false expression. So a theatrical performance or a child wearing a medal to honor his grandfather, those types of expression are not what the statute covers. But otherwise, other, it goes to the pure expression itself. Is there any speech of value going on here that's worth protecting? Your Honor, I believe there is. And what is there in Mr. Swisher's conduct that was worth protecting? It's not so much the conduct. It is the expression behind the conduct. What was Mr. Swisher expressing that was worth protecting and that is protected by the First Amendment? Your Honor, Mr. In this situation, Mr. Swisher is expressing that he is deserving of military honor. He's deserving. Was he? The jury found that he wasn't, Your Honor. And therefore. Do you contest that? That's what. I mean, you haven't you haven't argued there wasn't sufficient evidence to support that verdict. That's correct, Your Honor. It's pretty much a given, isn't it, that he was not deserving of that honor? That's correct, Your Honor. So Judge Vibey's question is what expression did he offer up that's deserving in your term of First Amendment protection? And that takes us back to the Alvarez case, Your Honor. Well, then your answer may be because the Supreme Court makes us, but I have trouble with the word deserving. I understand, Your Honor. Is there any additional gloss on the statute? I mean, the Parliament panel put a gloss on the statute, and we seem to be assuming it's gloss, right? It's not there, but the notion that they said it meant an intent to deceive. And but that was deceived without any injury. Suppose we added to it, you know, even a very abstract injury. I mean, in this instance, he was clearly using it to get some sort of credibility or attention. Suppose we put a slightly additional gloss on it. Could we do that? Well, Your Honor, I believe the statute can be more narrowly drawn. Well, I understand that. The question is what is our authority as a court in looking at what the statute and what Congress actually meant to avoid invalidating it is whether we could add attention to, you know, garner respect, undue, you know, non-merited respect or something. Because he was obviously trying to get something out of it. He wasn't just doing it for fun. That's correct, Your Honor. I think drawing it in those terms would be problematic, because I believe there's almost infinite type of possibilities. Now, if it was to be drawn to prohibit the attempt to achieve something tangible, a benefit or something like that, but — Right. But why does it have to be something tangible? That's what I'm wondering. I mean, we now have sort of a group of cases. There are like four of them or five that were recent ones. And they all have the same flavor, don't they? I mean, they were all somebody who was trying to get people to look at him differently and give him at least some authority or listen to him or do something they wouldn't otherwise have done because of it, not simply look and say, oh, that's nice, you have a medal. Correct, Your Honor. I suppose the answer is tied into the fact that we want to be able to give him the ability, even if we don't appreciate what he's doing and what his expression is, still give him the ability under the First Amendment to relay that expression. So being able to draw it into some sort of context where we say you can have false expression unless you are trying to obtain some sort of recognition in public I believe just is untenable. And I just don't believe it's something that can be enforced. Alvarez tried to get recognition, too, right? I'm sorry, Your Honor? Alvarez tried to get recognition. I mean, he was at a public meeting and he said, you know, you've got to listen to me because I'm not just any guy. I forgot what he said, but it was all lies, right? Correct, Your Honor. So the Supreme Court has asked an answer to that question. Correct, Your Honor. The Supreme Court has said. We may not agree with it, but just getting public recognition or just feeling you're an important person is not, according to the Supreme Court, enough to be deception, right? That's correct, Your Honor. Could you address the government's argument that the medal or wearing the medal is government speech and so the government has the right to control its expression? Yes, Your Honor. Unfortunately, I believe that confuses the issue. And I believe it because of this. If the medal and the manufacturing, the regulation, the awarding of the medal is government speech, and assuming it is under the Texas v. Walker case or the Walker v. Texas case, all that does is still make us ask the question, what sort of private speech in relation to that government speech will we allow? The government is certainly free to disregard the interest it does not want to espouse. And that's what I'm saying here is that the privacy or the private speech is something the government can reject. And that is something that the Supreme Court in Alvarez, again, says the government can do. The government can have counter speech. The government can create a database with medal winners. In that case, it was the Medal of Honor. In our case, it's Purple Heart, Silver Star, and a few other medals. Much longer list. Yes, a few more medals. No, but a lot longer list of recipients, which would be probably harder to file. Right. Correct. But I believe the – I don't believe the saying this is government speech answers the question. I still believe we must get to the issue of whether the private speech is protected. Well, the question is what this is. The medal clearly – I mean, the decision to confer the medal and the medal which seems to say, we, the government, think that you're a hero, is government speech, is it not? It is. So the private speech is essentially the government gave me this medal, which isn't true. Correct. Which then the government can reject. The government can use its own speech to counter the false speech or the false expression in this case. Could the government do – I mean, this is a criminal sanction, which seems to sort of raise the bar. I mean, could the government do something else? Could they confiscate all make-believe or non-merited medals? Could they have some civil proceeding to disavow that this is actually the right person or something like that? I believe it could, Your Honor. First of all, the way 704A has been amended now – It does do some things to some extent. You can't sell the medals, right? Correct, Your Honor. Under 704A – So there is a prohibition on the transfer of these things. I mean, it's not always effective, but it's something the government does. Yes. The government has numerous regulations about who can issue the medals, how they're awarded and those sorts of things. So the government has the ability to do it that way. And, you know, certainly they could take civil legal action. I suppose they could both possibly sue the incorrect – Get an injunction? Get an injunction. I'm asking. Can they? Your Honor, I would have to look at that issue. I haven't looked at that closely. But I think that's a possibility. Well, I mean – Well, then don't you implicate free speech in the same way? I mean, I don't know if these are real medals or not. I'm not sure the record is clear. Do you agree with that? I believe that's correct, Your Honor. We don't know if they're really a government medal or a colorable imitation. But if the government goes in to get an injunction against you wearing a medal, wouldn't you be standing up there making the same free speech arguments? Well, Your Honor, first of all, we wouldn't be talking about that in a criminal context and imprisoning someone for that. We'd rather be talking about – That's not the question. The question is whether in a civil context, if there is an injunction against wearing a medal, would you take the same position? Because you told us that he has the right under free speech to make this statement. What's the difference? The consequence may be different, but the initial evaluation of the speech is not, is it? Your Honor, and the government did bring up a similar issue, I suppose, in the trademark type of cases. But this isn't a trademark case. This is not. This isn't the Olympics. This isn't the Olympics case. We're not talking about commercial endorsement or deception of consumers. So maybe back to my question, if you would. Your Honor, unfortunately, I'm not sure. I don't know if – where we'd be in that situation, if we'd be standing right here or if it would be a situation where the injunction is granted and it – the interest of the government is compelling. Do you think Texas v. Johnson would have come out differently if Mr. Johnson had been enjoined from burning flags in the future? I don't think so, Your Honor. These are not good questions to confront for the first time at oral argument. Lawyers should try to think of these ahead of time. Yes. But your answer shouldn't – is your answer – I mean, generically, I mean, you don't need to give a result. I mean, your answer is this is First Amendment speech, and whatever the standard is, it applies in the criminal-civil context. It will apply because, in your view, this is protected First Amendment expression. That's correct, Your Honor. And the fact that it's raised in a criminal context and a civil context shouldn't make any difference, according to your view, right? I believe so. I mean, you may not know how it plays out in any particular case, but it's one standard, right? Yes, Your Honor. I would agree with that. Let me ask you a procedural question. Assuming hypothetically that the issue is in front of us, this issue was not presented by your client on direct appeal. So what is your – if the issue is before us, how can you show cause and prejudice for your failure to raise that on direct appeal? Your Honor, I believe that that was addressed by the court, but I – No, the panel said it was waived, but I went back into the record. And what the district court did was to accelerate the process to benefit your client without the benefit of government briefing. So it's kind of hard to fault the government for not raising the issue when it wasn't given the opportunity to raise the issue before the district court. So assuming that issue is before us, what's your answer as to showing cause and prejudice for failure to raise it on direct appeal? Well, Your Honor, Mr. Swisher did allege ineffective assistance of counsel. I did not represent him at the jury trial. And so I believe he – you know, I believe there – the court at least found that – the district court at least found that there was prejudice to the level that they were going – the district court was going to raise that issue and certify it for appeal. So I think that's why we're here. Well, actually, the district court said it didn't – it recognized the waiver potential and didn't reach the issue. So it's still an open question as far as the record is concerned, I think. Yeah. Do you agree with that, that it's still an open question? I – unfortunately, I think – I don't think it is because I think we are – the government has waived it and the government has not objected to it. The government is here now and has not brought up that issue. Well, you wouldn't expect them to stay home when we have an embankment hearing, would you? No, Your Honor. So did the government raise it on appeal? My recollection was they did not raise this issue, procedural bar on appeal. The government did not, Your Honor. And they didn't raise it in their supplemental briefs? No, they didn't, Your Honor. Are you going to – assuming we get past the question of whether this is, in fact, treated as speech, which standard of review we apply, assuming it's First Amendment speech, whether we apply Justice Kennedy's standard or Justice Breyer's standard, or whether it makes a difference in this case? Your Honor, I think it does make a difference, but we would – we would argue – You think it does? You think it does? Why does it make a difference? I believe there is a question, and I would – You'd lose on the Justice Breyer standard? I'll take that back, Your Honor. Maybe the question wasn't phrased clearly enough. I mean, you know, so let me rephrase it. Which standard do you think applies? And do you think the result would be different if we picked Justice Breyer's standard? I mean, obviously, Justice Breyer's is more restrictive than Justice Kennedy's. So if we picked – if we decided that Justice Breyer's standard is controlling, would that change the outcome as far as your client is concerned? Your Honor, to answer the first question, I believe we use the strict scrutiny standard. And I base that on, of course, what Justice Kennedy said. Well, Justice Kennedy only had four votes, right? And so Justice Breyer was needed to make a majority. Justice Breyer's result is narrower because he would have struck down less of the statute, right? So it seems to me under Marx that's the narrowest holding and, therefore, the controlling opinion. I mean, tell me why I'm wrong about that. Your Honor, I – the problem with Marx is I don't know that using the intermediary standard or intermediate standard would be the logical subset of what the – what the plurality did. Well, everything that – everything that Justice Breyer would strike down under his standard would be struck down by the plurality, plus some things that Justice Breyer wouldn't. So there is not – it's not sort of overlapping. It's not like Venn diagram, you know, so overlapping. They are subsets of each other. Well, Your Honor – So isn't – doesn't that necessarily make Justice Breyer's standard the narrower one? I think the problem, though, is I think there are – where the – where the plurality would control and would not – or the intermediary standard would not control or would not find the same thing that the plurality would find. Additionally, we've got dissent from three justices. So we have seven justices who did not find that standard at all. And then we've got the Texas v. Johnson matter. And I believe that that is more controlling in this situation. And I say that because in that case, we're talking more about expressive conduct rather than pure speech. Right. But first we have the question of the falsity. In other words, before you get to the – we can assume for now that this is just as much expression as in Alvarez, but the question is that in Alvarez, there was a – the falsity issue is where the split was. That's correct, Your Honor. Johnson doesn't help you on that. I'm sorry? Johnson doesn't help you on that, does it? When it comes down to falsity? Yes. As to what standard is to apply to false speech. I think it's more about expressive conduct or expressive – What's more about expressive conduct? The what standard to use. But doesn't it seem odd to you that – you know, Johnson basically says to the government, you have a freer hand in regulating conduct than written or spoken speech. But doesn't it seem odd to you that if we take your position and we have to look at what the plurality v. Justices Kagan and Breyer did in Alvarez, you would have us in a situation where a higher standard would be invoked in this case than was in Alvarez ultimately? Isn't there something upside down about that, since this is conduct rather than fewer written or spoken speech? Well, Your Honor, with the four-justice plurality, I think we – we look to that. I – and I think – Well, suppose we decided that it was the two justices under Marx that were governing. Do you win or do you lose? Back to that question. Your Honor, I – even in that one, I believe we win. Okay. And I said – Please tell us why. And I can – because the – Because essentially the Fourth Circuit opinion did that, right? They looked at the two-person plurality, said that was the controlling opinion under Marx, and then said in almost exactly the same circumstances that the individual – that there was enough distinction from Alvarez with regard to tailoring and so on that the person – that the individual lost. So the question is, why were they wrong? You're referring to the Hamilton? Yes. That's what I'm referring to. And I believe the Court in that case assumed that the strict scrutiny standard would – would control rather than the intermediate standard. They, in fact, punted on that and said we'll go with strict scrutiny, right? They just assumed, yes, Your Honor. I think we're back to Judge Berzon's question. It seems to me that with the intermediate scrutiny standard, where all the government must show is that 704A is within the constitutional power of the government and furthers an important government interest, you lose. At steps three and four of that, Your Honor, the – the – we can't say the – the prohibition is unrelated to – to expressive conduct, because I believe it is related to expressive conduct. I believe it's – But that – that misses the point. The point is, even with expressive conduct and even given that we're going to go and talk about whether we have strict scrutiny or whether we're in intermediate scrutiny, how can what you're arguing survive the low standard for intermediate scrutiny? Because all the government has to show is it's within the power, constitutional power of the government, and it furthers an important interest. And? And it seems to me that – And that they are not other less restrictive means. That's an important part that I'm sure Judge Smith was going to add on. Well, I – just a minute. I wanted him to talk about that, because that's where we are. If we're on less restrictive means, then it seems to me we fall back with what the Fourth Circuit did, and they didn't even find that there were less restrictive means even to meet the strict scrutiny standard. That's correct. They did, Your Honor. So it seems pretty simple on an intermediate scrutiny standard when we have the same issue in front of us, unless we want to depart from what our colleagues on the Fourth Circuit did, quoting Judge Kaczynski as they went. Correct, Your Honor. The Fourth Circuit was – and they did discuss this matter. They discussed whether what they were doing is violative of United States v. Alvarez. Isn't the question not just some abstract intermediate scrutiny. It's that you had whatever scrutiny Justice Breyer was applying, whether you call it – with Justice Kagan, whether you call it intermediate or idiosyncratic or whatever, he applied it. And the question is, is there anything about this situation that's – what about the situation is the same or different in terms of the way it was applied in Alvarez? I mean, not just sort of some sky thing, but they did something specific about something very closely related. And they said, for example, it wasn't tailored because there were various other possibilities. And the question is, how is the situation different if it is, or the same? I think it's the same, Your Honor. I think it's – when we get down to it, we've got the same – But specifically. As to the specific things they said. Specific things? That the Breyer opinion went into. That – well, I believe the interests of the government are the same in both the Breyer, from what Justice Breyer says, as well as what we have here. Why aren't the government's interests a little bit different in this context? Because even though it's not, as Judge McEwen said, a trademark case, it seems like there is some trademark-like property interest that the government has developed over time in the symbolism that these medals hold, right? Correct. So why isn't this worse than just the pure speech context? Because you're doing something that, I don't know, in a tangible way, harms the symbolic value of this thing that the government has invested a lot of time and effort to develop. And I understand what you're saying. But I believe what we have, though, is the ability to counter that. We still have the ability. And with the medal, not only do we have, say, speech where it's fleeting and it's gone, but we have a medal now where someone can be photographed, someone can be identified with wearing that honor. And that gives further evidence to take to the government to tell the government, here's what we have. Is this valid? This wasn't just a statement. So I look at it more as a proof issue and something that is maybe easier to show and have the government then combat. But it seems to me if wearing and having the medals is far more prudent than just talk, that harsher countermeasures would be required, therefore suggesting what is now required is appropriate. Your Honor, and I believe what the way the law reads now is it's more about stopping the secondary market for these medals. The government has not. Well, that's not the only thing we have in the Supreme Court opinion, and I'm not sure that's exactly it. But, I mean, I was trying to look at what the Supreme Court looked at. We can go through was there a harm to the military honor system? Is there a database and a counterspeech that's enough for this type of thing? Then we can go down to wearing and having the medals. That's bigger proof. So we need further countermeasures, it seems. Well, that's what we got, further countermeasures. That's what the Fourth Circuit said. Correct, Your Honor. But I believe that I don't know how much further countermeasures we need. They didn't ask for any further. They just said the statute was enough. But further countermeasures were required given that this was wearing and having it, which was more proof than just talk. Correct. But that would lead, again, to what I've stated, is that with that proof, the government has more knowledge about what the fraudster is saying, what the fraudster is wearing. Therefore, the countermeasures that can be placed, certainly the database, certainly the speech, the government speech, and that gives the public. These honors are public recognition. So that gives the public the ability to go see who, in fact, is a medal award winner. But you will agree with me that there's no question there is proof here. There was no proof in words. And, therefore, with that additional proof for having the medal, putting it on your uniform or wherever you want to put it, that that's a better proof that your expression that you say they're making is true. Therefore, harsher countermeasures could be required. Your Honor, I agree. It would be much less likely for someone to see the medal and then question. However, I still believe that with the physical object, the countermeasures are still appropriate in this circumstance. You're down to about a minute and a half. Do you want to reserve? Thank you. I'll wrap up. Thank you. May it please the Court. John Pelletieri from the Department of Justice on behalf of the United States. There are important distinctions between the wearing prohibition of 704A and the provision of the Stolen Valor Act that was struck down in Alvarez. The Stolen Valor Act prohibited, prescribed pure speech. It prescribed written or verbal statements, false written or verbal statements. But what's being prescribed here is pure speech, no? I mean, it's essentially putting this on as a statement that I deserve and got this medal. It's expressive conduct, Your Honor. Why is it expressive conduct? Excuse me, Your Honor? In what sense is it expressive conduct? It conveys that an individual who's wearing the medal was awarded the medal when it was struck down. Somebody wears a picket sign on them or a sign on their T-shirt or words on their T-shirt, that's not pure speech? Well, this is a design with writing on it, and they're wearing it. But even just wearing the design itself would be speech, wouldn't it? Well, the Court has – the Supreme Court has treated expressive conduct as a – some expressive conduct as akin to pure speech and some expressive conduct as not akin to pure speech and then, therefore, applied a different standard. But how does this vary from someone who wears a cross necklace signifying I am a Christian, for example? Well, you have to look at the specific object. No, we have a specific object. It's a cross. The nature of the specific object, the government has taken great effort to create these objects in order to convey a particular message. Exactly. That's a different point. That's a different – Yes. But it also – well, yes, in our view, it has two conclusions. That's the whole problem. The problem is that it is meant to convey a message, and the problem is that he's – he really isn't supposed to be conveying that message, but it's not – that's not a message. Well, we don't – we don't dispute that there's a message involved here. No, but I don't understand how it's expressive conduct, how it's anything other than expression. Well, I don't think the notion between – the distinction between expressive conduct or non-expressive – Why did you start there, then? Excuse me. So why did you start with that, as if it had some significance? No, because the nature of what is prohibited here, the fact that it's conduct, totally apart from whether it's expressive, treated as akin to pure speech, is relevant – Does the government have any interest in this other than its expression? Yes. The government has an interest in protecting the integrity of the medal system. That's its own message, but it's still a message. The – and the property interest, essentially, the property interest that the government has created through its great effort in creating these medals. But I'd like to just get back to the whole notion that the distinction between pure speech or expressive conduct is not relevant in this case. Now, it's – excuse me. It's relevant in terms of the actual prohibition and how it applies to the doctrine of government speech and applies to, assuming that there is private speech, the application of First Amendment scrutiny. But it's not relevant to determining the level of scrutiny here. As the courts suggested, the concurrence in Alvarez holds that false statements of easily verifiable fact about things other than politics, history, science, are – are subject to intermediate scrutiny. Now, that doesn't matter if it's pure speech, as in the case in Alvarez, or conduct, expressive conduct. Now, what's relevant, though, the fact that it's conduct, the fact that it's the use of these objects in a deceptive manner really is important to applying the scrutiny that Alvarez requires. Let me ask you, if you went to Thanksgiving dinner with your family and you wore this medal, can you be convicted under the statute? If you have an intent to deceive, yes, you could. Now – But how – how does that differ from Alvarez, where they said the statute sweeps too broadly because it goes into family, personal, social, and private context? That's the whole – Why – why is Thanksgiving dinner in the sanctity of your home, burnishing your reputation with your relatives, any different than the Alvarez situation? Well, the private-public distinction was relevant than Alvarez. And it's – it's – there's – and this statute could reach private conduct, but what – Well, now, you just told me he can be convicted for going to Thanksgiving dinner with his medal. Yes. Yes, it could reach private conduct. But what's different is that pure speech statements could just occur extemporaneously. Would this be any different if you had – instead of giving people medals, they gave them a piece of paper. And the piece of paper said, you know, you are commended for your valor and your service. And this guy went around showing this piece of paper. Yes, there would be a difference. Because you're not misappropriating the government – the symbol that the government has created. It's appropriating a piece of paper that the government gave – gives out. Is there a difference between a piece of paper and a piece of medal? I'm not – well, I'm not clear from the Court's hypothetical exactly what this piece of paper would be. It's a certificate. It's an award. Well, I think you'd have to look at it in the context of the certificate. I think for the – in the context of government speech, there are three factors, and I'd like to talk about it in the government – in the context of government speech. A certificate very well could be government speech. There are three factors that are important, that were important in Texas v. Alvarez and that are important in this case. Number one is the history of conveying government messages through these objects in this manner. In the license plate situation, this occurred starting in the early part of the 20th century. You mean Alvarez or do you mean Walker? Oh, excuse me, Walker. This occurred starting in the beginning of the 20th century. Now, military medals have a much longer history, an established history. The second factor in Texas v. Walker was whether these objects are associated with the government. That's – that was President – We agree that this obviously is at least in part government speech. It's the government saying this guy's a hero. That's fine, but that's not the speech that's being prescribed. The speech that's being prescribed is his speech saying, you know, I deserve this medal. All regulations, or almost all at least, regulations of government speech to protect the integrity of government speech and the message that's conveyed will have collateral effects on private expression. That occurred in the Texas v. Walker case. An individual could not put a Confederate flag on his or her license plate. That affected – That was – but that was simply because the government was not required to accommodate speech it disagreed with when it was giving its speech on the license plate. This is a different situation. This is, once the government has spoken, you're suggesting that the government can then prohibit the message from being used for a different purpose or controverted or prohibit others from imitating. That's a different type of action than was in Walker. It is a little bit different than Walker, but – Not only a little, it's a big difference. Well – Supposing Swisher purchased this medal and improperly wore it. He did not prevent the government from speaking in the first instance, and he didn't require the government to accommodate his view. Why would that be a violation? Because the medal that he purchased, whether it's an actual bona fide medal or if it's a colorable imitation, has gained meaning through the government's processes, and that's the third factor in the Texas v. Walker case, the extent to which the government takes caution, takes effort. Suppose somebody really got the medal, and he's wearing the medal, and next to it he's or the government's – or something completely anti-government. Can the government prohibit that? No. But that's undermining their medal, right? No, because the medal still conveys the fact that the government – even if he disagrees with the government's message, the government is still conveying the message through the medal that we, the government, felt that this person was worthy of being awarded that medal. He may disagree with our message, but we still believe that that person, he served the military efforts of the United States with valor, military merit, honor, courage. That's – the medal still conveys that, even if he disagrees with that message. Well, then, why would we not then say that the government can prohibit a person from misrepresenting the contents of or defacing a government press release? Well, if it's – if the government issues a press release and someone – I mean, it seems to me once the government has made the speech, then what people do with the speech is a totally different matter. But it's the matter of whether the government issues the speech. And what they said in the Sons of the Confederate Veterans were, you don't have to accommodate what other people want in the government speech. But once issued, it's a totally different situation on prohibiting what's done thereafter. Well, the government – and this is the language in the Supreme Court – is the government can take action when it conveys its message through private actors. It can take action to prevent the words that the Supreme Court used are distortion or garbling of the government's message. Let's say, counsel, that we reject your government speech argument and find that the statute really prohibits the content, the message of the conduct in this case. Applying Justice Breyer's intermediate scrutiny review, why doesn't this statute fall for the same reasons that the plurality in Justice Breyer articulated in Alvarez? Because of the very important differences between the prohibitions and the two statutes and how those prohibitions play into the calculus of the intermediate scrutiny. Now, intermediate scrutiny has three essentially components. Well, wait a minute. I mean, I don't know what Justice Breyer was doing. It was Justice Breyer's own thing. I mean, he wasn't purporting to, as I understand it, to be applying some established doctrine, was he? Intermediate scrutiny, Your Honor. Intermediate scrutiny? Or he said, you know, this is the way I'm going to do it. No, he said intermediate scrutiny. He said, in this case, I think it's best described as intermediate scrutiny. And the way — And proportionality review is the other way that he articulated it. Now, he did indicate that there are countermeasures that can be imposed, and there's a way to more narrowly draw the statute. I don't understand why those arguments don't apply equally to the wearing provision as it did to the oral and written provisions. Well, there are three components of the intermediate standard, and the differences between the Stolen Valor Act and the wearing provision play into the conclusions at each stage of the standard. Could you clarify? I guess what I'm really trying to get you to address is the countermeasures that were discussed in Alvarez's opinion and why they wouldn't apply equally with regard to the wearing provision, the creation of the database, and the fact that the statute can more narrowly be drawn. Absolutely. I'll jump to the third part of the standard, which is whether there are — whether the prohibitions in the statute advance the — the extent to which the prohibitions advance the government's interests and whether there are other alternative, less restrictive measures. Now, the focus of the Alvarez decision, of the plurality, and also to a certain extent of the concurrence, was the availability of a list, essentially. And the list, in this case, would not serve the purposes of the government for — effectively for two reasons, or at least two reasons. The first is that in Alvarez, the focus was on the Congressional Medal of Honor and the ability to have a list of the Medal of Honor. Here, we're talking about all medals, and it would be much more difficult to have a list of every medal received by every individual service member on all occasions. Number two — How difficult would that be in a — in a digital age when you have a database of everybody who's been in the military, you know, whether they've been discharged honorably or dishonorably, and you know from their discharge papers what medals they received? I mean, it's — I have a little trouble understanding the practicality of your argument, particularly when it's one that the Supreme Court referenced. So maybe you can expand on that. Well, two things. One, the point about digitalization, that might be relevant moving forward at a certain point in time. But going back to what our records are now, it's not feasible. But number two — Where is that on the record? Where is that? I mean, for evaluating the less burdensome means, we have to do it based on the record. Where is that on the record? Well, the government — we haven't stated the government report, the Department of Defense report in our brief, but that was cited in the Alvarez decision as well, where they focused on the Congressional Medal of Honor. But there's also a second — another reason, and the fact — even if we had a totally comprehensive list of every medal worn by every person, that would not serve the ends of the wearing prohibition. Because even if someone wears a medal that they're not authorized with the intent to deceive, even if exactly contemporaneously everybody knows that that person did not earn that medal, and if everybody can just wear medals whenever they want with the intent to deceive — But Alvarez said it wasn't contemporaneous. That wasn't the — Well, I'm assuming that even contemporaneous, which is the most — Excuse me. The hypothesis, as I understand it in Alvarez, wasn't that it was contemporaneous, that if somebody said this, anybody would contemporaneously know. It was that you could check. No, but we're assuming that even the best — the best list available, where everyone could have a little database with them and can check immediately if someone did or did not earn a medal, that would not serve the same ends as the wearing prohibition. Why not if you're at a meeting and the person next to you is wearing the Purple Heart and you say, hey, I did the same thing. I was in Vietnam. Here's what happened to me. I'm also a Purple Heart winner. He goes to jail and I don't. Both of us are lying. So what's the difference? The difference is that someone used a symbol that the government issues, that the government takes considerable effort to create, to convey a message, and misappropriated that message, and in doing so undermined the ability of the government to communicate through that physical object. Even if we had a database saying, yes, this person did or did not wear — win a medal, that would not prevent — and then if everyone could still just wear medals whenever they wanted. Doesn't that argument apply equally to saying a lie? The part that the Supreme Court struck down precluded lies about, you know, any medal. So I'm having trouble. The thing that's holding me up is unless there's a meaningful distinction between lying about your awards and lying by wearing an award you didn't get, then it seems like Alvarez's plurality concurrence, a — there is a less restrictive alternative and here it is. But it's not lying about an award you didn't get. That's exactly what Alvarez was. It's wearing a medal deceptively. But the medal is symbolic speech. You would agree with that, right? It's symbolic speech saying, as Judge Berzon said, it's — you're a hero. The government says you're a hero. And by wearing it you're saying the government says I'm a hero. And so unless there's some meaningful distinction between symbolic speech of that sort and speaking, then it seems like we're just bound by Alvarez's analysis, which would be equally applicable to both. The scope of the prohibition in the two cases, in the two statutes, have different contours, okay? The Stolen Valor Act had a contour that prohibited pure speech, words and written statements. And the wearing prohibition has different contours, the prohibition. It prohibits just wearing an actual medal or a colorable imitation. These are objects that the government has — And so what's the meaningful distinction from a First Amendment perspective? And that distinction plays into every step of the intermediate scrutiny analysis. The first step of the analysis requires that the scope of the prohibition be assessed, giving consideration to any speech-related harm. And a lot of the focus on the Stolen Valor Act prohibition was the potential for really wide-ranging prosecutions and prohibitions of people who make a false statement in Barstool Brogadaccio or in a whisper. Now, that is very different than actually obtaining an actual medal or a colorable imitation, affixing it to oneself. The obtaining is separately prescribed, and no one's challenging that, right? It's not prescribed, Your Honor. I can go online. It is. Excuse me, Your Honor? Selling it is. Selling it. A manufacturer can sell it to anyone. These are available for purchase online. I thought selling it is prescribed by the statute. Not by a bona fide manufacturer. So if a collector could purchase them from a manufacturer, the prohibition is on wearing them deceptively. So why aren't civil penalties sufficient? Well, the civil penalty is the distinction between a civil prohibition, for example, and an injunction, where the scope of a criminal prohibition would not affect the analysis. You would look at the scope of the prohibition. It does for least restrictive means. I'm sorry, Your Honor. In terms of least restrictive means, why wouldn't civil penalties be sufficient to achieve the government's ends? Well, I think in terms of least restrictive means, you're analyzing the scope of the prohibition. Whether it's civil or criminal, the scope is the same. And a civil prohibition of lesser scope wouldn't serve the same interest as the criminal prohibition of the scope that's presently or was available. Counsel, we've talked so far about the idea of publishing lists of legitimate users as being the most restrictive means. But Justice Breyer said, and a more finely tailored statute might, as other kinds of statutes prohibiting false factual statements have done, insist upon showing that the false statement caused specific harm or at least was material or focused its coverage on lies most likely to be harmful or on contexts where such lies are most likely to cause harm. But why doesn't that answer the third prong here, that there is a less restrictive means? It's suggested by Justice Breyer, and that's out of statute that requires a certain degree of specific harm. We think that the statute here is consonant with the more limited statute envisioned by Justice Breyer because it is focused in an area where there's more likely to be harm. Now, Justice Breyer talked about statutes that prevent deception in the trademark area and talked about the San Francisco Arts case. Now, San Francisco Arts prohibited the use of the word Olympic not only in commercial area but also in promotional area that had no commercial purpose, and it didn't require any confusion. And the Supreme Court said, well, yes, the Olympic Committee has expended a lot of effort in developing this, the meaning to this word to have certain associations. This statute doesn't say anything about specific harms. They said the statute should say that the false statement causes specific harms or focuses its coverage on lies most likely to be harmful. Yes. Or on contexts where such lies are most likely. The statute says nothing about harm. And I don't, we don't read. It says any wearing, any wearing of the medal, not any wearing that causes harm. Well, we don't read Justice Breyer's analysis as requiring an element of harm. We think it also encompasses contexts where harm is implicit. And that is the context we have here. Harm is implicit in using the, a medal established by the government. We make extensive efforts to establish meaning in these in a deceptive manner. How is that different from the harm by speaking, claiming to have that medal? That's the question. I'm sort of interested in your idea of property rights. You mentioned property rights. I'm always interested in property rights. No, the, I mean, if you sell a drink and you have a Coca-Cola logo and it's not Coca-Cola, then that would be a trademark infringement. Is it any different if you just stand there on the street corner and say, hey, I'm selling you Coke. This is Coca-Cola. I'm selling it. It can't be any different, is it? If you're using the, Coca-Cola has a secondary meaning, Your Honor. And so if you're using the words. Does it have any other meaning than the product made by the Coca-Cola? No, exactly. And that's why Coca-Cola, when you speak the words Coca-Cola. And so this is similar to, for example, the statutes that prohibit use of the word, the words Federal Bureau of Investigation or. Somebody said in a trademark context, and then I have another question. If somebody handed you a glass and said, this is Coca-Cola, is that better or worse than handing them a bottle that says, I'm a Coca-Cola? Well, we think you could do, we obviously think you could do both, consistent with the First Amendment. Arguably, the actual using of the can is worse for Coca-Cola because it dilutes their mark, their visual mark, which is very important to them. But all that's predicated in the trademark arena on a grant of a property right. Congress gave the Olympic Committee a limited property right. The Lanham Act and other parts of the trademark law actually provide a property right. That's not really what we're talking about here, is it? Well, they're also. We're talking about a speech right. Are you saying we're pitting the government's property right in the medal versus a speech right? We believe we do, in effect, have a property right in these medals because they. What about ones that are false? Well, the property right is in the visual depiction of what they look like. Essentially intellectual property is what you're saying. I'm sorry, Your Honor? You're essentially saying intellectual property. Yes, intellectual property rights. Can I ask when the government has a right to claim an intellectual property right in the medal, you're saying? In effect, yes. And that's not what they claimed here. I'm sorry. You waived that argument here. That's not the argument here that it's a property right. You're saying that it's a – that it's not speech. No, it. It's a limited kind of speech. We're saying two things. But what did you say in your brief that it's a property right, that it's a trademark right, that it – maybe I missed that. Let me say it. I'll just go back and look at that. I mean, you cite the Olympic. You said it. It protects the government's legitimate property rights in the medals. Okay. That's on page 28, Your Honor. Can I ask a question, because it's somewhat related to this? I had asked you whether the statute prohibits purchasing attempts to – it says you can't purchase, attempt to purchase, solicit for purchase, mail, ship, import, et cetera, et cetera. It used to say where. Where is now gone. But why did you tell me that if the statute doesn't say that? It says you can't do anything with these medals, doesn't it? I'm sorry. Could you – A says whoever knowingly purchases, attempts to purchase, solicits for purchase, mail, ships, imports, exports, produces blank certificates of receipt for a manufacturer, sells, attempts to sell, et cetera, et cetera, any decoration or medal authored by Congress for the armed forces can be imprisoned. So when I asked you whether the statute bans selling or buying, you said it didn't. Except as authorized. Except as authorized. Right. Yeah. The way that there used to be a closed – my understanding from talking to the people at the Institute of Heraldry is that there used to be a closed system where everyone had to obtain their medals through the military. Now, that's the typical way people still do it. You can get your first set, and then you can get a second set, and then for a nominal fee you can get as many as you want through the military. But you can also purchase it directly from manufacturers, and I believe that that system was changed starting in the 90s. Really? Doesn't that somewhat undermine your property and intellectual property notion? No, because it's the symbol. It's the symbol. I mean, anyone can purchase a can of Coke as well. It's the symbol. You can't use the Coke symbol. Well, you can purchase, but you can't sell. Well, this is selling from authorized manufacturers. I don't think – my understanding is you can't just buy one and then sell it on the street. But Congress prohibited that, and why isn't that a narrower way of dealing with the problem? It says no. You just stop committing that. Well, someone could still get their hands on a colorable imitation or an actual metal and wear it. If they're just freely being sold to people, that makes it a little more difficult to extend any control. Well, that's why the wearing prohibition is significant. It's now gone. It's now gone. Right. And why wouldn't the revised statute actually serve that interest that you're talking about in a less intrusive way? In other words, now you can't go out and basically try to leverage the metal, whether you talk about it or wear it. Why isn't that a least restrictive means that Justice Breyer was referring to? It is a less restrictive means, but the Intermediate Scrutiny Standard does not require – but it also does not address all of the harms associated with it. So it's less effective in advancing the government's interests. And the least – and the third prong, the least restrictive aspect. Well, that would seem to be more effective. I mean, i.e., if the government didn't have these just running around freely, they wouldn't have the problem so much. Your Honor, I was talking about the current Stolen Valor Act, which prohibits either wearing or making statements in a manner that gains tangible benefit. That prohibition doesn't advance the government's interests as effectively. And the intermediate – third prong of the Intermediate Scrutiny Standard does not require the government – and so it – so at the second prong, it doesn't – there's a different calculus there. But also the third prong, the Intermediate Scrutiny Standard does not require the government to take the least restrictive means. A regulation passes the third prong of the Intermediate Scrutiny Standard if the government's interests will be less effectively advanced absent that regulation. Before you sit down, could you answer the question that Chief Judge Thomas asked your opposing counsel about the waiver? Do you remember the question? Procedural default, I believe. Yeah. Yeah. I just wanted to make sure I knew the government's position on that. Yes. Well, we haven't raised it. We did not think it would have been appropriate to raise it in our supplemental. Actually, I'm not asking for a history. I'm asking for the government's position as to whether, for purposes of our hearing here, it was waived or not waived. Under the Barron – this Court's Barron decision, we believe it was waived because we had the opportunity – what happened in Barron. Your position is that you waived it. Our position is that it's best categorized as appellate waiver, which doesn't categorically prevent the Court from addressing it if it wants to. And the Court could ask us for additional briefing. But we have waived it under appellate waiver by not raising it in our first brief. So you aren't raising it. You're putting it in the category of appellate waiver, but you are not conceding that it was waived by the government before the district court. It was not waived before the district court because we didn't have the opportunity to raise it. The district court ruled on the motion before asking for a response.  Go ahead. Could you talk about the anti-impersonation statute, where you can't wear a military uniform and the courts have come pretty close to holding that constitution? I was surprised that you hadn't mentioned it. How does that figure in to this statute in terms of how we analyze them? Well, we believe they're very much congruent. The false impersonation statute prevents someone from acting in a manner that suggests they're a government agent. And that's very much similar to, and this Court upheld it under both strict and intermediate scrutiny in the Tom Schoenmiguel case. And we believe that that strongly supports our argument that this, the same calculus should be, should be applied here. And also, there's the, there's not only the false impersonation, but there's also wearing military uniforms. There's a prohibition against using the Great Seal of the United States. And I was referring to that, to what, Section 702 has a, you can't wear a military uniform. Yes. So that's a crime, right? Yes. Okay. And the Court upheld that, or excuse me, the Fourth Circuit upheld that and the Supreme Court has strongly suggested that that's constitutional. In the Schacht case, they suggested it was constitutional on its face, and there were suggestions in the Alvarez decision as well. I believe Judge Clifton had a question, and I interrupted. Did you want to? All right. Oh, very good. Your time has expired. Thank you very much for your argument. Thank you, Your Honor. You have a minute, 18. Thank you, Your Honor. With the time I have left, I would just like to address the impersonation statutes. Those were brought up right at the end there. In regards to the Schacht case and the military uniforms, in those cases, we have a government, someone who is impersonating a government agent. They are inciting someone to take a course of action. In this type of situation, where someone's wearing a military medal, that's not necessarily the case. There is no inherent course of action. The falseware of the military medal is trying to get someone to take. There is no he's not pretending to speak on the behalf of the government. So I don't believe that. Would the statute be valid if it said something like what I was saying before, i.e., anybody who wears this for the purpose of inducing people to regard him as a hero and, therefore, accord him more respect? Again, I think that is a very, very difficult distinction to make. Because I believe the more appropriate one would be to add if someone was trying to gain some sort of benefit, whether it's a ---- I know, but I'm wondering why you need a specific benefit as opposed to, you know, more access or respect or, you know, recognition. And I understand what the Court is saying, but I just believe trying to take it into such a narrow context, I believe, gives us an untenable type of case to prosecute or to present to a jury in that situation. Thank you, Counsel. Thank you. The case just heard will be submitted for decision, and we will be in recess.
judges: Thomas, Pregerson, Reinhardt, Kozinski, McKeown, Berzon, Clifton, Bybee, Ikuta, Smith, Nguyen, Watford